**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

In re:  EDWARD LEE JONES; BENJAMIN
DWIGHT WALTERS; JAMIE MICHAELE
WALTERS; VALERIE ELAINE KINSEY;
JEFFERY THOMPSON; FARON L.
PRINCE; PARRISH K. PRINCE,

      Debtors.

------------------------------

WACHOVIA DEALER SERVICES;
WELLS FARGO FINANCIAL, INC.;
WELLS FARGO BANK, N.A.,

      Appellants,

     v.

EDWARD LEE JONES; WILLIAM H.
GRIFFIN, Trustee; BENJAMIN DWIGHT
WALTERS; JAMIE MICHAELE
WALTERS, f/k/a Jamie Michaele Pounds,
f/k/a Jamie Michaele Morsett; VALERIE
ELAINE KINSEY; JEFFERY THOMPSON;
FARON L. PRINCE; PARRISH K. PRINCE,

      Appellees.

------------------------------

NATIONAL ASSOCIATION OF
CONSUMER BANKRUPTCY
ATTORNEYS,

      Amicus Curiae.

No. 07-3256

Jill D. Olsen (Michael P. Gaughan, with her on the briefs), South & Associates, P.C., Overland Park, Kansas, appearing for Appellant.

Kenneth M. Gay, Lenexa, Kansas, appearing for Appellee.

Tara Twomey, Esq., National Association of Consumer Bankruptcy Attorneys, Washington, DC; Cynthia Grimes, Grimes & Rebein, LLC, Lenexa, Kansas; and Jill A. Michaux, Esq., Principal Attorney for amicus curiae National Association of Consumer Bankruptcy, Neis & Michaux, P.A., Topeka, Kansas, filed an amicus curiae brief.

Before **HENRY**, Chief Circuit Judge, **TACHA**, and **LUCERO**, Circuit Judges.

**TACHA**, Circuit Judge.

The appellants are creditors in five Chapter 13 bankruptcy proceedings. They appeal the bankruptcy court's confirmation of the debtors' debt reorganization plans. Exercising jurisdiction under 28 U.S.C. § 158(d)(2)(A), we VACATE the confirmation orders and REMAND the cases to the bankruptcy court.

## I. BACKGROUND

All five cases involve "910 car loans." That is, in each case, the creditor financed the debtor's purchase of a vehicle for the debtor's personal use within the 910 days preceding the debtor's filing of a bankruptcy petition. *See* 11 U.S.C. § 1325(a) (describing a claim secured by a vehicle purchased for the debtor's personal use within

the 910 days preceding the debtor's filing of a bankruptcy petition). Under the terms of the loan, the creditor acquired a purchase money security interest in the debtor's vehicle. In their Chapter 13 plans, the debtors proposed to keep the vehicles and to pay the contract balance on these loans without postpetition interest. The creditors objected to the plans, arguing that they are entitled to postpetition interest on their claims under 11 U.S.C. § 1325(a)(5)(B)(ii).

The bankruptcy court overruled the creditors' objections and confirmed the plans. The court also denied motions for reconsideration filed by the creditors in four of the cases. After filing separate appeals with the Bankruptcy Appellate Panel of the Tenth Circuit ("BAP"), the creditors filed a motion to companion the five cases, which the BAP granted. The BAP also granted the creditors' motion for certification to appeal to this Court under 28 U.S.C. § 158(d)(2)(A). We subsequently granted the creditors' petition for permission to appeal. *See id.*

## II. DISCUSSION

To determine whether the bankruptcy court erred in overruling the creditors' objections to confirmation of the plans, we must decide whether a creditor secured by a 910 vehicle (i.e., a vehicle purchased within the 910 days prior to the debtor's filing of a bankruptcy petition) is entitled to postpetition interest under 11 U.S.C. § 1325(a)(5)(B)(ii). Our review of this legal question is de novo. *See In re Harper*, 516 F.3d 1180, 1185 (10th Cir. 2008).

In order to qualify a plan for confirmation under Chapter 13 of the Bankruptcy

Code, a debtor must accommodate each creditor with an "allowed secured claim" in one of three ways under § 1325(a)(5). The debtor may (1) obtain the creditor's acceptance of the plan, § 1325(a)(5)(A); (2) surrender the collateral securing the claim, § 1325(a)(5)(C); or (3) make property distributions (e.g., monthly payments) that are "not less than the allowed amount of such claim," § 1325(a)(5)(B). Under the third option, the creditor is entitled to the present value of the claim.[1] *See* § 1325(a)(5)(B)(ii). Consequently, when the debtor chooses to satisfy this option by making periodic payments, "the amount of each installment must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds that of the allowed claim." *Till v. SCS Credit Corp.*, 541 U.S. 465, 469 (2004) (plurality opinion). In other words, to ensure that the creditor is compensated for the decreasing value of an allowed secured claim over time, a bankruptcy court must ensure that the plan proposes an appropriate interest rate. *Id.* at 474; *see also id.* at 487–88 (Thomas, J., concurring in the judgment).

The creditors in the cases before us argue that they are entitled to the formula, or prime-plus, rate of interest endorsed by the plurality in *Till*. *See id.* at 478–80. Conversely, the debtors urge us to conclude, as the bankruptcy court did, that as a result of a 2005 amendment to the Bankruptcy Code, a creditor who has a claim secured by a 910 vehicle is not entitled to interest at all because a 910 car claim is not an "allowed secured claim" within the meaning of § 1325(a)(5). In the alternative, they argue that the

---

[1]This option is often referred to as the "cram down" because it does not require the consent of the claim holder. *See Till v. SCS Credit Corp.*, 541 U.S. 465, 468–69 (2004).

bankruptcy court has the authority to approve plans that do not comply with §

1325(a)(5)—over creditors' objections—because the conditions specified in the statute

are not mandatory.

A.    Present-Value Requirement of § 1325(a)(5)(B)(ii)

Typically, the value of an allowed secured claim under § 1325(a)(5)(B)(ii) equals

the value of the collateral securing that claim, rather than the entire balance on the loan.

This valuation is a result of the bifurcation of an allowed secured claim under § 506(a).

Under § 506(a), a claim secured by a lien is separated, or bifurcated, into a secured

portion reflecting the value of the property and an unsecured portion reflecting the

remaining debt or deficiency. When a claim is bifurcated under § 506(a), the debtor may

retain the collateral and meet the requirements of § 1325(a)(5)(B) by making payments

only on the secured portion of the bifurcated claim (i.e., the value of the collateral).

Bifurcation is no longer available, however, when the claim is secured by a 910

vehicle. As a result of the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 ("BAPCPA"), a debtor may no longer keep a 910 vehicle and make payments based

on the present value of the collateral, rather than on the amount of the claim.[2] As we

_____

[2]The relevant amendment appears at the end of § 1325(a) and is referred to as the "hanging paragraph" because it is unnumbered. It provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim
> described in that paragraph if the creditor has a purchase money security
> interest securing the debt that is the subject of the claim, the debt was
> incurred within the 910-day [sic] preceding the date of the filing of the
> petition, and the collateral for that debt consists of a motor vehicle (as
> defined in section 30102 of title 49) acquired for the personal use of the

recently explained in *In re Ballard*, 526 F.3d 634, 638 (10th Cir. 2008), because the bifurcation provision of § 506 does not apply to 910 car claims, these claims are treated as fully secured under § 1325(a)(5)(B).

The bankruptcy court reasoned that, because a 910 car claim cannot be valued under § 506(a), it does not constitute an "allowed secured claim" for purposes of § 1325(a)(5). We rejected this argument in *In re Ballard* because it rests on the "faulty premise that § 506(a) generally *defines* the term 'allowed secured claim.'" *Id.* at 640–41. We explained that, "[i]n the absence of express language linking the meaning of 'allowed secured claim' in § 1325(a)(5) to § 506(a), the most natural reading of the phrase is that it describes a claim that is both 'allowed' under the Bankruptcy Code and 'secured' by a lien." *Id.* at 641. Thus, a claim that is allowed under § 502 and secured by a lien on a 910 vehicle is an "allowed secured claim" under § 1325(a)(5). *Id.* Moreover, because a 910 car claim is not subject to bifurcation under § 506(a), the holder of such a claim is entitled to the present value of the entire claim under § 1325(a)(5)(B)(ii). Indeed, the language of this provision explicitly requires that property distributions equal the present value of the "claim," not the collateral securing the claim. *See* § 1325(a)(5)(B)(ii). The bankruptcy court therefore erred in overruling the creditors' objections to confirmation of these plans; the creditors are entitled to interest calculated to ensure they receive the

---

debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

present value of their claims.[3]

B.     Mandatory Nature of § 1325(a)

Even if the creditors are entitled to interest under § 1325(a)(5)(B), the debtors

argue that we can affirm the bankruptcy court's orders confirming the plans because the

conditions for confirmation delineated in § 1325(a) are not mandatory. In support of this

argument, they point to the language of § 1325(a) and the Third Circuit's holding in *In re*

*Szostek*, 886 F.2d 1405, 1411 (3d Cir. 1989). As we explain below, we find their

arguments unconvincing and hold that the provisions of § 1325(a) are mandatory

requirements for the confirmation of a Chapter 13 plan.

We begin by acknowledging that § 1325(a) does not expressly state that a court

must confirm a plan *only* if certain conditions occur; rather, it states that "the court shall

confirm a plan if" these conditions occur. According to the debtors, this language permits

confirmation of a plan that does not satisfy the conditions because the statute does not

direct the court to confirm a plan *only* if the conditions occur. Read in context, however,

the conditions specified in § 1325(a) are clearly mandatory requirements. *See Davis v.*

*Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of

statutory construction that the words of a statute must be read in their context and with a

---

[3]Although the creditors initially argued that they are entitled to the contract rate of interest, they have abandoned that argument and now ask only for the formula rate adopted by the plurality in *Till*. Thus, we need not decide whether bankruptcy courts *must* apply the *Till* rate of interest to 910 car claims under § 1325(a)(5)(B). *See, e.g.*, *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 350 (5th Cir. 2008) (holding that the *Till* plurality's rate of interest applied to a 910 car claim).

view to their place in the overall statutory scheme.").  For example, § 1325(a)(3) permits confirmation when "the plan has been proposed in good faith and not by any means forbidden by law."  If we were to adopt the debtors' reading of the statute, a bankruptcy court would have the discretion to confirm a plan even if it were proposed in bad faith or by illegal means.

Given this result, it is not surprising that we have repeatedly treated the conditions set forth in § 1325(a) as mandatory.  *See, e.g.*, *In re Mersmann*, 505 F.3d 1033, 1048 (10th Cir. 2007) (en banc) ("[Section] 1325(a)(1) of [the] Code permits the confirmation of a plan *only* if it is consistent with the rest of the Code."); *In re Young*, 237 F.3d 1168, 1174 (10th Cir. 2001) (noting that § 1325(a)(3) requires that a Chapter 13 plan be proposed in good faith); *In re Rasmussen*, 888 F.2d 703, 706 (10th Cir. 1989) (reversing the confirmation of a Chapter 13 plan because it was not proposed in good faith as required by § 1325(a)(3)).  Moreover, in analyzing questions arising under § 1325(a), the Supreme Court has described the statutory conditions as mandatory requirements.  *See Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 956 (1997) ("To qualify for confirmation under Chapter 13, the [debtors'] plan had to satisfy the requirements set forth in § 1325(a) of the Code."); *Johnson v. Home State Bank*, 501 U.S. 78, 87–88 (1991) (noting that a "bankruptcy court is authorized to confirm a plan *only* if the court finds" that certain statutory conditions, including § 1325(a)(5), have been met (emphasis added)); *see also In re Bateman*, 331 F.3d 821, 829 n.7 (11th Cir. 2003) (noting that the Supreme Court has treated the provisions of § 1325(a) as mandatory).

Furthermore, a reading that fails to recognize the mandatory nature of § 1325(a) would be in conflict with § 1329, the section governing modification of a plan after confirmation. This section explicitly states that "the *requirements* of section 1325(a) . . . apply to any modification" under § 1329. § 1329(b)(1) (emphasis added). To hold that the conditions set forth in § 1325(a) are not requirements for confirmation would clearly "violate[] the general maxim that the Bankruptcy Code and Rules be construed so that their provisions are harmonious with each other." *In re Mersmann*, 505 F.3d at 1048 (quotation omitted).

We therefore hold that the conditions set forth in § 1325(a) are requirements the debtor must satisfy to qualify a Chapter 13 plan for confirmation. As a result, when a secured creditor objects to confirmation because the plan does not comply with § 1325(a)(5)—as is the case here—the bankruptcy court may not confirm the plan unless it meets the requirements of that subsection.

As we have previously indicated, however, if a secured creditor fails to object to confirmation, the creditor will be bound by the confirmed plan's treatment of its secured claim under § 1325(a)(5). *In re Talbot*, 124 F.3d 1201, 1209 n.10 (10th Cir. 2007). This is because the failure to object constitutes acceptance of the plan. *See In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1266–67 (10th Cir. 1988) (holding that a creditor's failure to object to a Chapter 11 plan constitutes acceptance of the plan). And a creditor's acceptance of a Chapter 13 plan is one way to satisfy the requirements of § 1325(a)(5) with respect to that creditor's allowed secured claim. *See* § 1325(a)(5)(A) (providing that

a plan qualifies for confirmation with respect to an allowed secured claim when the holder of such claim accepts the plan). In short, when the holder of an allowed secured claim does not object, the court may interpret this silence as acceptance under § 1325(a)(5)(A); under these circumstances, the plan need not meet the requirements set forth in § 1325(a)(5)(B), including the present-value requirement.

The decision cited by the debtors, *In re Szostek*, essentially stands for this proposition—that is, that a creditor's failure to object constitutes acceptance and permits confirmation even if the plan does not treat an allowed secured claim in accordance with § 1325(a)(5)(B). *See In re Szostek*, 886 F.2d at 1414. Citing our decision in *In re Ruti-Sweetwater*, the Third Circuit rejected a creditor's challenge to a Chapter 13 plan, holding that the creditor accepted the plan when it "failed to object timely to the plan's confirmation." *Id.* (citing *In re Ruti-Sweetwater*, 836 F.2d at 1263). This holding is consistent with our prior case law and our decision today that the conditions regarding allowed secured claims in § 1325(a)(5) are mandatory: if the creditor objects (i.e., does not accept the plan under § 1325(a)(5)(A)), the plan must meet the requirements of § 1325(a)(5)(B).[4]

Although *In re Szostek* contains broader language that suggests the provisions of § 1325(a) are not mandatory, *see* 886 F.2d at 1412, the court expressly limited its holding

---

[4]We have never cited *In re Szostek* as support for the debtors' position that the conditions of § 1325(a) are discretionary. Rather, our past decisions have cited the case as support for the general proposition that creditors must affirmatively assert their rights prior to confirmation. *See In re Andersen*, 179 F.3d 1253, 1257–58 (10th Cir. 1999), *overruled by In re Mersmann*, 505 F.3d at 1051; *In re Talbot*, 124 F.3d at 1209 n.10.

to the facts of the case, discussing at length the creditor's failure to object to confirmation, *id.* at 1413–14. We therefore read the court's holding narrowly. To the extent the court in *In re Szostek* suggested that the statutory conditions are not mandatory, we disagree. They are requirements for confirmation of a plan. *See In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994) (holding that § 1325(a)(5)(B)(ii) is mandatory).

Here, the creditors objected to confirmation of the plans. Because they did not accept the plans, *see* § 1325(a)(5)(A), and the debtors did not surrender the vehicles, *see* § 1325(a)(5)(C), the plans had to satisfy the requirements of § 1325(a)(5)(B)(ii) by proposing property distributions equaling the present value of the claims. Because the plans do not provide for the payment of interest on the claims, they fail to satisfy the statute's present-value requirement, and the bankruptcy court erred in confirming the plans over the creditors' objections.

### III. CONCLUSION

Accordingly, we VACATE the bankruptcy court's orders confirming the plans and REMAND to the bankruptcy court for further proceedings consistent with this opinion.